LANDRY, Judge.
This suit by plaintiff-appellee, Larry B. White, is for a money judgment in the sum of $2,500.00 against his former associate, Edward D. Plodzik, defendant-appellant, representing one-half of a $5,000.00 fee earned by the parties, both of whom are Certified Public Accountants, in their joint handling of the preparation and filing of a Federal Estate Tax Return. Without assigning written reasons therefor, the trial *69 court rendered judgment in favor of plaintiff for the amount demanded, together with interest and costs. We are in accord with the result reached by the lower court and affirm its decision.
The pertinent circumstances resulting in this lawsuit are as follows: Mr. Plodzik, a Certified Public Accountant with many years experience, engaged in his stated profession in Bogalusa, Louisiana. Among Mr. Plodzik’s numerous clients was one H. D. Bickham, for whom Plodzik did both accounting and tax work. Mr. Plodzik engaged the services of plaintiff, White, as an associate and for a time the two operated jointly as a firm of practicing certified accountants. After approximately a year of such association Plodzik, for reasons unnecessary to relate, decided to sell White his practice and open an office in Houston, Texas. Following Plodzik’s departure from Bogalusa, Mr. Bickham died. Having confidence in Plodzik, Bickham’s widow employed White to handle the tax aspects of her deceased husband’s estate with the assistance of and subject to Plodzik’s supervision. It was agreed between Plodzik, White and the Bickham heirs that the fee for said services would be paid in two installments, namely, one-half when the Federal Estate Tax Return was filed and the remaining half upon acceptance of the return by the Internal Revenue Service or upon the elapse of two years from the date of said filing, whichever occurred first. The return was eventually filed whereupon one-half the fee, or the sum of $5,000.00, was paid in the form of two checks, one to Plodzik in the amount of $2,500.00 and another in similar sum to White. Subsequent to filing the return due on Bickham’s estate, and while final determination of the Internal Revenue Service was being awaited, plaintiff, White, became ill. White then sold his practice to one Richard M. Seal and left Bogalusa without notifying Mr. Plodzik. Thereafter, the Internal Revenue Service accepted Bickham’s estate tax return whereupon Mrs. Bickham mailed Plodzik a check for $5,000.00 in payment of the remaining sum due on the contract for accounting service. Said check bore the notation “Payment in full for services rendered by Plodzik and White.” When Plodzik declined to pay White one-half of said sum, this suit ensued.
Appellant maintains the trial court erred in (1) rendering judgment in favor of plaintiff notwithstanding plaintiff’s failure to establish his case by a preponderance of evidence, and (2) failing to dismiss plaintiff’s demand because of plaintiff’s alleged lack of interest in the subject matter of the suit considering plaintiff admittedly sold to Seal all of plaintiff’s rights in the account receivable involved in this action. While not formally assigning error in said regard, appellant further contends plaintiff is not entitled to recovery herein because of plaintiff’s alleged failure to perform certain duties assumed, namely, collection from the Bickham estate of the remaining $5,000.00 due.
In essence plaintiff testified he and Plodzik were engaged by the Bickhams to prepare the mentioned Federal Estate Tax Return. The arrangement, according to plaintiff, was that the fee charged would be shared on an equal basis. White also stated that the agreed fee was $10,000.00, of which amount $5,000.00 was to be paid when the return was filed and which first installment was paid December 7, 1962. He further stated that the remainder was due two years after filing date or when the return was accepted by the Internal Revenue Service, whichever first occurred. In addition, White testified his obligation was to do the “leg work” which he explained meant compiling and accumulating the data necessary to prepare the return. He also stated that he agreed to prepare a rough draft of the return and forward same to Plodzik with all the collected data which Plodzik would then use to prepare the final return for filing. According to White, he was not charged with the exclusive responsibility of collecting the account. He further stated that there was no mention of *70 responsibility for collection of the fee but that Plodzik had written several letters requesting White to collect the balance due on several accounts, including that of the Bickhams. White also testified that he sold his practice to Seal on March 11, 1964, including the accounts receivable (among which was the Bickham account) with a guarantee of collectibility. Finally, he testified that when it became apparent Plodzik would not pay the remaining portion due on the Bickham account, he paid said sum of $2,500.00 by crediting that amount to one of Seal’s notes given in payment of the price Seal paid for the accounting practice.
In substance defendant stated that after Bickham’s death, White called and informed Plodzik that the Bickham family desired Plodzik to prepare the necessary estate tax return. According to Plodzik, it was understood White would accumulate the necessary personal and financial data and submit same to Plodzik together with a rough draft of the return which Plodzik would then use to prepare the final return. Plodzik emphasized that it was White’s duty to collect the fee involved and that was the only basis on which he would agree to prepare the return or have White assist him in the process. Defendant admitted receipt of the $5,000.00 check dated June 25, 1964 bearing the notation “Payment in full for services rendered by Plod-zik and White.” He also stated that after learning of White’s departure from Boga-lusa, he proceeded to contact the Bickham family and collect the balance of the fee. According to Plodzik, it was White’s responsibility to collect the account and disburse half thereof to Plodzik. He denied, however, that White’s failure to collect the balance due was considered by him as a default in White’s obligation on which Plodzik predicated his refusal to pay.
Bruce Bickham, son of decedent H. D. Bickham, and France W. Watts, Jr., the attorney who handled Mr. Bickham’s succession, were both called by plaintiff to testify. Each stated they had no knowledge of the details of the agreement between plaintiff and defendant herein. Mr. Bickham further testified that his family had engaged both plaintiff and defendant to prepare the tax return required to settle decedent’s estate. In addition, Mr. Watts stated it was upon his instruction that the “payment in full” notation was placed on the reverse side of the check sent to Plod-zik in payment of the final $5,000.00 due the accountants. Both witnesses declared the check sent Plodzik was intended as complete discharge of all payment due both plaintiff and defendant.
In addition to the foregoing testimony plaintiff introduced numerous correspondence between the parties from which we readily conclude plaintiff and defendant agreed to share the fee in equal portions. It suffices to mention two letters in particular. First, a letter dated December 31, 1963, from defendant to plaintiff, in which we note the following:
“In going over my uncollected accounts I note that the Bickhams’ estate still owes us jointly $5,000.00. Inasmuch as eighteen months have elapsed, it is quite possible that the Government is going to accept the return as filed and I would like to suggest that you give the Bickhams a statement for the $5,000.00 and ask them to pay us.”
Plaintiff’s reply to the foregoing communication is contained in a letter to defendant dated January 9, 1964, wherein White informed Plodzik that Bruce Bickham desired to defer final payment until two years elapsed from the date of filing the estate tax return. White further informed Plodzik that as of the date of White’s letter, no information had been received from the Internal Revenue Service regarding the return in question.
Appellant’s contention that plaintiff has failed to make out his case by a clear preponderance of evidence is without merit. In this regard we note that in his oral examination defendant admits the fee was *71 to be shared equally and implies that appellant became irked by plaintiff’s failure to collect the balance due. In addition to defendant’s own verbal testimony at the trial, defendant’s letter of December 31, 1963, in which defendant acknowledges the indebtedness of the Bickhams to plaintiff and defendant jointly, is further corroboration of plaintiff’s testimony to the effect the fee was to be shared equally.
Nor do we find any merit in defendant’s contention that it was plaintiff’s duty exclusively to collect the balance due. Assuming arguendo, it was plaintiff’s duty to collect the balance due, the mailing of the final check directly to Plodzik rather than White would not affect plaintiff’s right to his half thereof. In this regard, defendant stated on cross examination that such was not the basis of his contention that he owed plaintiff nothing further under this particular arrangement.
There remains the contention that White has no right or cause of action herein inasmuch as he sold his interest in the Bickham account to Seal. We find the argument without basis in view of White’s uncontradicted testimony that when it became obvious Plodzik would not pay the remaining $2,500.00 due, White was obliged under his guarantee to credit Seal said amount on one of the notes given by Seal to White upon the purchase of White’s accounting practice. In this regard we note that whereas defendant had subpoenaed Seal who was present during the trial, nevertheless defendant did not call Seal to testify. It must be presumed, therefore, that had Seal been called he would have testified unfavorably to defendant. It is well settled that the unexplained failure of a party to call a summoned witness who is available to testify, raises the presumption that the witness’s testimony would be adverse to the case of the party calling him. Veillon v. Sylvester, La.App., 174 So.2d 189, and authorities therein cited.
Appellant contends plaintiff is without a right or cause of action herein because White did not obtain an express subrogation from Seal when payment was made to Seal by crediting the sum of $2,500.00 on one of Seal’s notes. In this regard, appellant argues that White, a third party to the transaction, was required by LSA-C.C. Article 2160 to obtain written subrogation from the creditor Seal to become conventionally subrogated to Seal’s rights. The argument is without merit. We are not here concerned with the conventional subrogation provided for in Article 2160, supra, in favor of a third party who has no interest in discharging the debt paid, but rather with legal subrogation as defined in LSA-C.C. Article 2161(3) and which takes place by mere operation of law. By guaranteeing payment to Seal, White became a guarantor which placed him in the same legal stead as a surety. See Brock v. First State Bank & Trust Co., 187 La. 766, 175 So. 569. Consequently, White, being a surety insofar as concerned payment of the $2,500.00 owed by the Bickhams, is entitled to claim the legal subrogation which pursuant to LSA-C.C. Article 2161(3) flows in favor of those who discharge an obligation when bound with others or for others, for the payment of the debt. Plaintiff, therefore, had a definite vested interest in discharging the obligation and was not a third party stranger to the transaction as alleged by defendant. It follows, therefore, that White was legally subrogated to Seal’s rights and consequently possesses both a right and cause of action herein.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.